Commonwealth *v.* Turner, Appellant.

202

Submitted March 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stephen A. Sheller,* and *Astor, Weiss & Sheller,* for appellant.

*Mark Sendrow* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., December 1, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Philadelphia County, Trial Division, by the defendant-appellant, Richmond Turner, after conviction in a non-jury trial of forcible rape and aggravated robbery and from the denial of his motions to suppress evidence and post-trial motions.

At 11 P.M. on November 1, 1969, the complainant, a 26 year old teacher of retarded children, was returning home in her car. She parked the automobile two doors from her home and as she started to get out of the car, a Negro male approached her and asked street directions. As she began to direct him, the defendant grabbed her, took $10.00 from her, put a knife to her throat and forced her into an alley. The place where she parked was well lit; the alley was not. He threatened her to shut up, stripped off her clothing and then finally succeeded in having intercourse with her.

In the meanwhile relatives and neighbors hearing the noise were searching for her and the defendant fled as police search lights closed in on the area. The entire incident took approximately 15 minutes. She described her assailant as a Negro male, 19 to 21 years of age, 6 feet tall, 160-170 pounds, medium complexion with a short bush hair cut, and wearing a duffle-type coat with cord fasteners and log buttons. She reviewed her description with a police artist who composed a drawing of the assailant and circulated it.

Two policemen who had received radio instructions to search for the missing woman on the night in question were driving near the area when a Negro male ran in front of their car and fled. They only had a glimpse of

him but identified him as the one described by the victim. The jacket as described by the victim was left at the scene. The fleeing man was not wearing a jacket. On the following day one of the officers spotted the same man and was unable to catch him as he fled. He was certain, in looking at the picture, that he was the same man he saw on November 1st and 2nd.

After a lapse of several months, the police apprehended the defendant and held a lineup. At that lineup, the validity of which is not at issue, the complainant identified the defendant with 85% certainty." She then requested a "voice lineup" at which all participants were behind a cardboard barrier allowing the witness to hear only their voices. She identified the defendant's voice. The case was tried twice. The first guilty verdict was reversed when both sides agreed to a new trial on the ground of incompetency of counsel. A suppression hearing was held before the second trial. The appellant moved to suppress the voice lineup, the two "one-on-one" identifications by the victim and the identifications by the police officers. The petition was denied with the exception of the "one-on-one" identifications of the police officers which were suppressed. Appellant was found guilty on both counts and at the second trial was sentenced to three to twenty years. However, after the first trial, he had received a sentence of six to fifteen years.

There are three issues:

The first is that the voice lineup was so inherently unfair as to require a new trial without the evidence of a lineup. This argument is based upon the testimony of a speech expert, a Dr. Schwartz, who testified at both the suppression hearing and at trial. The thrust of the testimony was first that at the distance in time ($3\frac{1}{2}$ months) from the rape the accuracy of voice identification was 35%. The court below correctly found this to go to the weight of the evidence and not its admis-

sibility. The second point was that the composition of the lineup was such that the complaining witness had no choice but to select appellant and thus the lineup was inherently unfair. The expert testified that research shows that male voices get considerably deeper between 20 and 60 years of age and further that 25% of this difference occurs between ages 20 and 25. This difference was such that if there were only one 20 year old voice in a lineup and the balance 25 years or older, the person listening would automatically reject the others and select the 20 year old. Appellant was 20 years of age at the time of the lineup and the other participants were 25 to 50 years of age.

There are two relevant cases: *Commonwealth v. Derembeis, et al.*, 120 Pa. Superior Ct. 158, 182 A. 85 (1935) and *Commonwealth v. Johnson*, 201 Pa. Superior Ct. 448, 193 A. 2d 833 (1963), which is a per curiam affirmance of an opinion by HONEYMAN, J., at 30 D & C 2d 780 (1963). In *Derembeis*, supra, which appellant cites as authority, this Court held that the evidence of a voice stand-in (lineup) is admissible but requires the most careful evaluation of the evidence and charge to the jury. *Derembeis*, supra, also had strong alibi evidence in the defendants' favor which is not the situation in this case.

We think that the rule of *Derembeis*, supra, is applicable here and that the procedure followed was not so prejudicial as to require that the voice lineup be suppressed under *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967) and *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). It is also apparent that the court below gave the evidence careful consideration. Appellant's expert testified at trial as well as at the suppression hearing, thus the finder of fact, in this case the Judge, had ample opportunity to establish the weight of the voice lineup. There was also other admissible testimony to identify appellant. Thus the fact finder may have entirely discounted the evidence

or accorded it little weight and still found appellant guilty. This is unlike *Derembeis,* supra, where the voice lineup was the only identification. Our view is further supported by the fact that some of the others in the lineup testified at the suppression hearing, thus the hearing judge could evaluate for himself comparative qualities of the voices, although the hearing was admittedly two years after the lineup.

We do, however, agree with Dr. Schwartz that for maximum fairness and best results all participants in a voice lineup should be of similar race, age and build. We are merely holding that the lineup was admissible, not passing on its weight.

The second issue is that the in-court identification was tainted because of the out-of-court, one-on-one identification and the voice lineup. The court below points out that the complaining witness had seen and identified appellant on other occasions such as the crime itself and at the original lineup. This is a sufficiently untainted basis for a valid in-court identification. *Commonwealth v. Goldwire,* 230 Pa. Superior Ct. 106, 326 A. 2d 546 (1974).

The court below said:

"There is nothing to suggest that the prosecutrix was susceptible to any possible 'taint' arising from the mere fact of having heard Appellant's voice at the Corporeal Line-Up. From the entire record, it appears that the prosecutrix was not the type of person to succumb easily to suggestiveness. Indeed, her actions were those of a person who wanted to be absolutely certain. Moreover, voice standing alone can be sufficient to sustain a conviction. Commonwealth v. Reid, 448 Pa. 288 (1972).

"Although in the Reid case, the witness had known the defendant for a period of five years and had heard his voice on prior occasions, to that degree it differs from the instant case. In the case at hand, the

witness had given an identification of voice by a descriptive manner prior to the Aural Line-Up which description matched what she had heard at said Line-Up . . .

". . . It is to be noted that the witness had the opportunity to view her attacker at the scene of the crime. They conversed with each other face to face. She gave an accurate description of the attacker. The degree of certainty of her physical identification as well as her identification of the voice, were substantial. There was no great lapse of time between the occurrence and the identifications. See *Commonwealth v. Goldwire*, 230 Pa. Super., 106, 109 (1974).

"The mental alertness of the witness in giving a description of the assailant by physical proportions, voice and clothing prior to any Line-Up, which description was corroborated by Officer Smith tends to buttress the credibility of the prosecutrix."

Finally, we are compelled to remand the case for resentencing. At his first trial, appellant received a sentence of six to fifteen years. At the second, the sentence was three to twenty years. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the United States Supreme Court stated:

"Whenever a Judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentence proceedings." 395 U.S. at 726.

Pennsylvania courts adopted this rule in *Commonwealth v. Silverman*, 442 Pa. 211, 275 A. 2d 308 (1971). The only reason given by the court below for its longer maximum sentence was that it felt supervision was required for a long time.

The Commonwealth argues that the sentence is in fact lighter because the minimum (which is used to determine eligibility for parole) is three years and that some of the increased maximum will probably be served on parole. While this argument has some merit, we cannot establish an equation which compares three years less minimum sentence with five years more maximum (some of which may be served on parole). The maximum sentence given appellant is longer than the original maximum and adequate reason for this is not established on the record.

The guilty verdict is affirmed and the case remanded for resentencing.

SPAETH, J., concurs in the result.