STATE of Missouri, Respondent,

v.

Algie NEWCOMB, Defendant–Appellant.

No. 69868.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 26, 1996.

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Senior Judge.

The defendant, after a four day trial, was found guilty of first-degree assault (Sec. 565.050, RSMo 1994); attempted rape (Sec. 566.030, RSMo 1994); and sodomy (Sec. 566.060, RSMo 1994), receiving concurrent 25 year sentences on each count. He does not challenge the sufficiency of the evidence to support the verdicts, and so we need not state the facts in great detail. We affirm.

During the early evening of April 24, 1994 the fourteen year old victim was walking home through some abandoned industrial property when she saw a man smoking. She asked him for a cigarette, which he lit for her. She then started walking again but he caught up with her, demanded an act of oral sodomy, unsuccessfully tried to rape her, and then sodomized her anally, after which he beat her unmercifully, inflicting severe injuries. She was seen lying on the ground by a passerby, who took her to a hospital.

She was examined in the hospital and surgery was scheduled for a fractured jaw. Speaking with difficulty, she gave a general description of her assailant to a nurse. Prior to her surgery a police officer showed her a display of photographs containing pictures of the clean shaven defendant, but she could not make an identification. She then had surgery under general anaesthetic.

After her surgery her mother tried to get her to remember more details about her attacker. She recalled that he had a panther tattoo on his arm and a tattoo further down on the arm containing two words, of which she remembered the two initial letters. Her mother reported these statements to the police officer who had presented the earlier photo display. The officer returned the following day and showed the victim another display of photographs containing a picture of the unshaven defendant, but she still made no identification. As he left the room the victim's mother reminded him of the report about the tattoos.

The officer returned the same afternoon with twelve photographs of tattoos, scars, and scratches from the defendant's body. He first showed the victim two pictures showing panther tattoos, which she immediately identified as being those she saw on her attacker. She was then shown the remaining photographs, some of which contained pictures of the defendant. She also said that she recognized scratches she had inflicted with her fingernails but this recognition was not brought out in the trial, although the finding of the scratches was testified to. The victim did not recognize other tattoos on defendant's hand and body, as shown by some of the photographs.

The defendant filed a pretrial motion to suppress the victim's identification of the tattoo and other marks, which was overruled. Counsel sought a continuing objection, and the judge indicated that he understood the claim.

At trial the victim described the panther tattoo and the other tattoo containing letters. The defendant was then obliged to remove his shirt and the victim recognized both of these tattoos as the ones she had seen during the incident. She also testified that the black stonewash jeans removed from the defendant at the time of his arrest looked like those her attacker was wearing. She could not and did not make a facial identification. There was no testimony at trial about the photographic display of the tattoos, and the officer who showed the pictures to the victim was not called as a witness by either side.

The state also introduced evidence of small blood stains on the jeans the defendant was wearing when arrested, and an expert serologist, Shirley Deng, testified that these were consistent with the victim's blood type but not with the defendant's. The defendant produced as a witness, Dr. Randall Libby, whom he qualified as an expert on DNA testing. The court permitted Dr. Libby to testify about the DNA tests conducted by Ms. Deng, but sustained an objection to his criticisms of the state's serological witness on the ground that Dr. Libby had not demon-

strated expertise in serology. The defense sought to establish his qualifications by an offer of proof, in which he indicated that he questioned the reliability of the state's serologist, but the state objected and the court refused the offer.

The defendant seeks reversal in two points. In Point I he argues that the victim's identification of the tattoos was the product of an impermissibly suggestive and unreliable photographic display. In Point II he predicates reversible error on the court's refusal to permit his expert witness to criticize the qualifications of the state's serologist. We conclude that both rulings were matters for the trial court's judgment, and that the defendant has not demonstrated error.

### 1. The Identification of the Tattoos

■ Many cases in our courts and in the Supreme Court of the United States have dealt with photographic identification, but in all of those that have come to our attention the identification has been of the face or general appearance of the suspect. This is the only one we have seen in which the identification shown in the pictures was of body marks. By analogy to the facial identification cases, we conclude that the questions of undue suggestiveness and ensuing reliability are primarily matters for the trial court to decide.

The state would terminate the inquiry on the ground that the defense made no objection to the victim's in-court identification of the tattoos at the time the testimony was offered. The defendant appears to argue, however, that the initial photographic display irrevocably tainted the victim's perception so that any future testimony she might give about the tattoos would be unreliable. It follows, the defendant argues, that she should not have been allowed to testify to the identification at trial. Both the prosecutor and the court were quite aware of the defendant's claim and the supporting arguments. We elect to rule the merits. *Cf. State v. Cooper*, 811 S.W.2d 786, 788 (Mo.App.1991).

■ The defendant recognizes his burden of demonstrating both impermissible suggestiveness and unreliability. *State v. Horn-*

*buckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). He rather assumes that the display of pictures showing only the defendant's markings was suggestive, and argues that "... it was simply not necessary that Detective Brown show the victim pictures of appellant's tattoos without including photographs of similar tattoos on other men ..." This suggestion might have struck the trial judge as totally impracticable, as it does us. *Cf. Neil v. Biggers*, 409 U.S. 188, 195, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972), (indicating that a one-person showup, rather than a lineup, might be appropriate if the police could not find people sufficiently similar to a suspect to put in a lineup). The trial judge might consider it extremely unlikely that similar tattoos could be found. If tattoos were displayed which were quite different, then this kind of display would have potential for suggestiveness.

It is next argued that "in this case there was no urgency." We disagree. The victim had been subjected to extreme trauma and to surgery under general anaesthetic. She was confined to the hospital. The defendant was in custody. The victim's mention of the tattoos was not in any respect prompted by the police. The trial judge might have found that the photographic display of tattoos and marks was the most reasonable procedure under the circumstances, that it was not unreasonably suggestive, and that it should not be delayed. If the results were negative, the police would be obliged to search for other suspects and the defendant might well be released. When the victim is hospitalized, the courts have been quite tolerant of bringing suspects to the hospital for a showup viewing. *State v. Hamblin*, 448 S.W.2d 603, 611 (Mo.1970); *State v. Rodriguez*, 519 S.W.2d 565, 568 (Mo.App.1975). The same reasoning would justify the presentation of the pictures.

There is, furthermore, no indication that the officer prompted the victim in any way in showing her the photographs. She had initiated the mention of the tattoos and the officer simply showed her the pictures. Inasmuch as she was never able to identify the defendant facially, the showing of the defendant's face in some of the pictures of the

markings, after the victim had identified the panther tattoos, would seem to be utterly nonprejudicial. The victim's inability to identify the defendant from photographs, or in court, is a circumstance supporting the reliability of her identification of the tattoos.

Based on the foregoing, the trial judge was wholly justified in allowing the jury to hear the victim's testimony in which she identified the tattoos. He was not required to find that the presentation of pictures in April of 1994 tainted her viewing of the defendant's body in December of 1995. We reject defendant's Point I.

### 2. The Rejection of Expert Testimony

The defendant proffered the testimony of an expert witness, Dr. Libby, who proposed to question the competence of the state's serological witness, Ms. Deng, who had conducted serological tests on blood found on the defendant's jeans. Dr. Libby testified that "... I don't claim to be a serologist, necessarily ..." The trial judge concluded that Dr. Libby proposed to testify on matters which were outside the area of his expertise. In a myriad of cases the courts have held that the trial judge has discretion in allowing or rejecting expert testimony and that the exercise of this discretion will be sustained unless an abuse of discretion is demonstrated. *State v. Seddens,* 878 S.W.2d 89, 92 (Mo.App.1994); *State v. Gola,* 870 S.W.2d 861, 864 (Mo.App.1993). The defendant has not demonstrated abuse of this discretion.

The defendant made an offer of proof in attempting to demonstrate his expert's familiarity with serology. It appears from this offer that Dr. Libby raised no question about the serological procedures employed in this particular case, but rather proposed to criticize Ms. Deng's general reliability and her performance on qualifying tests. The trial court might well believe that this kind of criticism should come from a person experienced in Ms. Deng's particular field, and that the testimony of a person such as Dr. Libby would not be helpful to the jury in judging Ms. Deng's qualifications and reliability, even though Dr. Libby claimed a general familiarity with the subject based on his study in

other areas. No abuse of discretion is demonstrated.

The judgment is affirmed.

AHRENS, C.J., and CRANDALL, J., concur.