COMMONWEALTH of Pennsylvania,
Appellee

v.

Jeffrey Alton CRORK, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 4, 2008.

Filed Feb. 10, 2009.

**586**

---

MaryJean Glick, Public Defender, for appellant.

Donald R. Totaro, Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, FREEDBERG, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 Jeffrey Crork appeals from a September 12, 2007 judgment of sentence entered following his conviction for robbery

pursuant to 18 Pa.C.S.A. § 3701. We affirm.

¶ 2 Crork was arrested after a 22 year old hotel clerk identified him as the man who had robbed her on May 19, 2006. Several days after the robbery, the clerk identified Crork from an eight person photo lineup, and also identified a single photo of a tattoo as the tattoo she had seen on the robber's arm. After Crork was charged with one count of robbery, he filed a pre-trial motion seeking to suppress the clerk's identification of his photo on the ground that the photo lineup used was prejudicial and unduly suggestive. Motion filed 5/24/07. Crork also sought suppression of the clerk's identification of the tattoo on the ground that he was prejudiced by the presentation of the single photo instead of a photo lineup of similar tattoos. *Id.* Following a hearing, the trial court declined to suppress either identification, and a jury trial was conducted on July 9, 2007.

¶ 3 Crork was eventually convicted of robbery and sentenced to a prison term of eight to 20 years. He now raises three allegations of error on appeal.[1] His first two claims pertain to the trial court's denial of his suppression motion. Our standard of review of a suppression ruling is as follows:

> We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we

---

1. Crork has complied with the trial court's directive that he file a Pa.R.A.P.1925(b) statement, and the trial court has filed a responsive Rule 1925(a) opinion.

conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Pruitt,* 597 Pa. 307, 325, 951 A.2d 307, 317 (2008). Here, Crork first asserts that it was error for the trial court to refuse to suppress the clerk's identification of Crork's tattoo based on a single photograph of the tattoo, because use of the single photograph instead of a photographic lineup of other similar tattoos rendered the identification unduly suggestive, unfair, and prejudicial. Appellant's brief at 16.

¶ 4 Crork's counsel raised this issue during the suppression hearing, urging that the identification of a person's tattoo should be subject to the same rules and constitutional protections as identification of the person himself, including the requirement that an out-of-court identification be made from fair, non-suggestive photo arrays. N.T. 7/9/07 at 33. The Commonwealth countered that a tattoo should be viewed as akin to the identification of an inanimate object, citing *Commonwealth v. Chmiel, infra,* and that any uncertainty in the description goes to the weight accorded the testimony, not its admissibility. *Id.* at 35. In denying Crork's request to suppress the clerk's identification of the tattoo, the trial court explained:

> With regard to the tattoo, I do find that this—any discrepancies between the victim's initial description of the tattoo and what was subsequently identified in the photograph is an issue of weight for the jury. Certainly some description was provided by the victim at the time she originally provided the information to law enforcement authorities. And, again, to the extent that her description differs from the actual tattoo or the photograph of the tattoo that she

was shown, that is an issue of weight for the jury.

N.T. 7/9/07 at 36–37. In their appellate briefs, both parties renew the points they raised during the suppression hearing, and indicate that they believe this issue to be one of first impression. Appellant's brief at 17; Commonwealth's brief at 7.

¶ 5 While it appears that no Pennsylvania Court has addressed whether constitutional standards governing identification of persons should apply to identification of tattoos, Pennsylvania courts have been asked to determine whether the constitutional protections afforded during identifications of persons apply to the identification of inanimate objects.

¶ 6 In *Commonwealth v. Carter,* 271 Pa.Super. 508, 414 A.2d 369 (1979), witnesses to a robbery identified a brown bag and gun barrel (which were then being carried by a police officer) as the objects carried earlier by the robber. *Id.* 414 A.2d at 371. In declining to afford the same constitutional protections to the identification these objects of real evidence as those afforded to the identification of a person, a panel of this Court explained:

> One of the purposes of invoking such stringent requirements on testimony relating to the identity of the accused is the enormous probative weight of such evidence, ofttimes deciding the issue by its admission alone. Identification of an item of real evidence, however, does not generally have this effect. Consequently, it has never been the case that identification of an object must be subject to the same precautions given the identification of a person. Rather, any uncertainty in the description, or suggestivity in a prior identification, goes to the weight to be accorded the testimony, not its admissibility.

*Id.,* 414 A.2d at 373.

¶ 7 *Carter* was later approved by the Pennsylvania Supreme Court in *Common-*

*wealth v. Chmiel,* 585 Pa. 547, 586–586, 889 A.2d 501, 523–524 (2005). In *Chmiel,* a witness identified the appellant's car from a single photograph. *Id.* 585 Pa. at 582, 889 A.2d at 521. In arguing that the trial court erred in permitting the identification evidence, the appellant asserted that "the identification of the item, i.e., the vehicle, had the effect of identifying Appellant himself." *Id.* 585 Pa. at 584, 889 A.2d at 522. The appellant urged the Court to abrogate *Carter* or to limit its application. *Id.* 585 Pa. at 583, 889 A.2d at 522. In declining to do so, the Court explained:

> To be sure, a pretrial procedure in which a witness views a photograph of the accused in an effort to "elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." *United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); see also *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Gilbert v. California,* 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). If such an identification procedure of the accused is "so unnecessarily suggestive and conducive to irreparable mistaken identification, [the accused] is denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). It is clear, then, that photographic identification of a person is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. *See Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102 (Pa.2004).

Neither the United States Supreme Court nor our Court has addressed whether the decisions in *Wade, Gilbert,* and *Stovall* extend the protections that are necessary for identification testimony of an accused to that of inanimate objects. However, almost every jurisdiction applies the test articulated in the *Wade* trilogy to the identification of a person, not physical evidence that might establish the defendant's guilt. *See United States v. Zenone,* 153 F.3d 725 (4th Cir.1998) (holding the due process clause inapplicable to witness identification of the weapons used by the robbers to link the defendant to the crime); *Johnson v. Sublett,* 63 F.3d 926, 932 (9th Cir.1995) ("*Stovall* and its progeny do not require car lineups."); *Dee v. State,* 273 Ga. 739, 545 S.E.2d 902 (Ga.2001) (finding the Wade trilogy test inapplicable to identification a gun, even though the procedure used was suggestive); *Hughes v. State,* 735 So.2d 238, 261 (Miss.1999); [*People v.*] *Miller,* [211 Mich.App. 30] 535 N.W.2d [518] at 523 [(1995)] ("Any suggestiveness in the identification of inanimate objects is relevant to the weight, not the admissibility, of the evidence."); *Brooks v. State,* 560 N.E.2d 49, 57–58 (Ind.1990); *State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312 (Ariz.1984) (*en banc*); *State v. Cyr,* 122 N.H. 1155, 453 A.2d 1315, 1317–18 (N.H. 1982); *State v. King,* 31 Wash.App. 56, 639 P.2d 809, 811–12 (Wash.Ct.App. 1982); *Iowa v. Bruns,* 304 N.W.2d 217 (Iowa 1981); *People v. Coston,* 40 Colo. App. 205, 576 P.2d 182, 185 (Colo.Ct. App.1977); *Inge v. Commonwealth,* 217 Va. 360, 228 S.E.2d 563, 567 (Va.1976); *Bear v. Halford,* 2001 U.S. Dist. LEXIS 10500, 2001 WL 34152086 (N.D.Iowa 2001).

*Chmiel,* 585 Pa. at 586–586, 889 A.2d at 523–524. In declining to "extend cases protecting an accused's rights to a fair pretrial identification to the pretrial identification of physical evidence," the Pennsylvania Supreme Court found:

> [T]here is no basis for applying the identification procedures applicable to sus-

pects to testimony identifying inanimate objects and we decline to extend cases protecting the accused's rights to a fair pre-trial identification to the pre-trial identification of physical evidence. There is a difference between an identification of a defendant and of an inanimate object. The due process concerns implicated in identification of a defendant are not implicated in the identification of a vehicle. Identification of an accused tends to be direct proof of the case against him, while that of an inanimate object is only indirect proof of the defendant's guilt. This principle is even more compelling in this instance because motor vehicles are not unique. On the other hand, there is only one person with the physical characteristics exactly like those of the defendant.

*Chmiel*, 585 Pa. at 587, 889 A.2d at 524. Thus the Court found that "the risks inherent in identification of inanimate objects go to the weight and sufficiency of the evidence instead of admissibility," and such identification evidence is properly submitted to the jury.

¶ 8 In the instant case, the Commonwealth urges us to view Crork's tattoo as an inanimate object and to apply *Chmiel*, while Crork disagrees, asserting that a tattoo must be viewed as a vital part of a person. We agree with the Commonwealth, and find *Chmiel* applicable to the instant case. Several factual circumstances are significant to our decision. Even Crork himself does not argue that the tattoo in question is unique. In fact, his counsel's closing arguments assert quite the opposite. N.T. 7/10/07 at 98. Further, it is undisputed that the photo depicted the tattoo only, with no other identifiers visible. Showing the photo of the tattoo to the clerk was no different than showing her a photo of other types of physical evidence such as an item of clothing or a weapon. As did the Court in *Chmiel*, we simply find that there is no basis for applying the identification procedures applicable to suspects to the identification of physical evidence. We thus conclude that the trial court did not err in failing to suppress the clerk's identification based on the single photo of the tattoo. *Chmiel, supra*.[2]

¶ 9 Crork next asserts that the trial court erred in refusing to suppress the clerk's photo array identification of him because the array contained only one other man with light colored eyes, and was thus unduly suggestive. We disagree. "A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." *Commonwealth v. Fisher*, 564 Pa. 505, 522, 769 A.2d 1116, 1126 (2001) (*citing Commonwealth v. Johnson*, 542 Pa. 384, 396–97, 668 A.2d 97, 103 (1995)). If a suspect's photograph does not stand out from the others, and the people depicted all exhibit similar facial characteristics the photographs used are not unduly suggestive. *Id.* Here, the trial court reviewed the array, which included pictures selected by a computerized system based upon similarity to Crork's appearance, and found nothing unduly suggestive. Rule 1925(a) opinion at 4. The trial court noted that all the men depicted had similar characteristics. *Id.* Our own review of the photo array confirms the trial court's observations. Despite his assertions to the contrary, nothing about Crork's photo, including the tone of his eyes, causes it to stand out from the other photos. Thus we find no abuse of discretion in the trial court's assessment

---

2. Crork also argues that the initial suggestive photographic identification of the tattoo tainted its later, in-court, identification. In light of our above conclusion, however, we find no merit to this claim.

that the array was not unduly suggestive, and its corresponding decision to admit the evidence. In addition, in light of our conclusion that the array was not unduly suggestive, we find no merit to Crork's claim that such suggestiveness tainted the later, in-court, identification.

¶ 10 Crork lastly asserts that the trial court erred in impermissibly relying on his prior record when imposing a sentence one year above the aggravated range of the sentencing guidelines.[3] This is a challenge to a discretionary aspect of Crork's sentence.

> Where an appellant challenges the discretionary aspects of a sentence, there is no automatic right to appeal and an appellant's appeal should be considered a petition for allowance of appeal. Before a challenge to a judgment of sentence will be heard on the merits, an appellant first must set forth in his or her brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his or her sentence.

*Commonwealth v. Miller*, 835 A.2d 377, 380 (Pa.Super.2003) (citations omitted). Crork's brief includes such a statement, in compliance with Pa.R.A.P. 2119(f).[4] In addition to including a Rule 2119(f) statement, "an appellant must show that there is a substantial question as to whether the imposed sentence was inappropriate under the Sentencing Code." *Miller*, 835 A.2d at 380 (citing 42 Pa.C.S.A. § 9781(b)). This Court has recognized that a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question. *Miller, supra*. We thus turn to the merits of Crork's sentencing challenge.

> If this Court grants appeal and reviews the sentence, the standard of review is clear: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. [*Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa.Super.2004)]. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. *Id.* It is more than just an error in judgment. *Id.*

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252–1253 (Pa.Super.2006). In addition, as this Court recently further explained:

> When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. *Commonwealth v. Walls*, [592 Pa. 557] 926 A.2d 957, [963] 567 (Pa.2007). An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa. C.S.A. § 9781(c)(3). In making a reasonableness determination, a court should consider four factors:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

---

**3.** Crork was sentenced to eight to twenty years imprisonment on September 12, 2007, after the court ordered and reviewed a presentence investigative report. The trial court later refused to modify this sentence.

**4.** Pursuant to that rule:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f).

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." *Walls*, 592 Pa. at 569, 926 A.2d 957. These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa.Super.2008).

¶ 11 In the instant case, the trial court imposed Crork's sentence after reviewing the pre-sentence report and considering the sentencing guidelines. N.T. 9/12/07 at 6, 9; Rule 1915(a) Opinion at 5. The trial court also considered the particular facts of the case, including the seriousness of the offense; the relatively young age of the victim; the impact of the crime on the victim; Crork's own age, health, intelligence and maturity level; his work history; and his unsuccessful attempts at rehabilitation from his drug and alcohol problem. N.T. 9/12/07 at 6–9; Rule 1925(a) Opinion at 6.

¶ 12 While the sentencing court also mentioned Crork's prior record, we find that the court viewed Crork's history of prior offenses as supporting evidence that Crork cannot accept the fact that society has "certain rules," and cannot abide by those rules. *Id.* at 8. See also Rule 1915(a) Opinion at 6. We do not consider this to be reliance on an improper factor, and even if it could be so viewed, it certainly was not the sole factor employed by the trial court in fashioning Crork's sentence, thus no abuse of discretion occurred. *Sheller*, 961 A.2d at 192 ("Even if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines.").

¶ 13 As such, after examining the record before us as a whole, we find that Crork has failed to show that the trial court imposed a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. In making this determination, we find that the sentence properly accounted for the statutory factors enunciated by Sections 9721(b) and 9781(d).

¶ 14 For the forgoing reasons, we affirm the judgment of sentence.

¶ 15 Affirmed.

¶ 16 POPOVICH, J. FILES A CONCURRING AND DISSENTING OPINION.

CONCURRING AND DISSENTING OPINION BY POPOVICH, J.:

¶ 1 While I join the Majority's analysis of the propriety of the photo array used by the police to identify Crork and its ultimate affirmance of Crork's judgment of sentence, I cannot agree with its assessment of the issue of the suppression of the photograph of Crork's tattoo.

¶ 2 At the outset, I begin with the observation that, in my view, the success or failure of Crork's tattoo photo suppression issue would not have affected the outcome

of this case. It is clear that the victim in this case identified Crork to the police from a photo array *prior* to her viewing of the photo of Crork's tattoo.[1] *See* N.T. Suppression hearing, 7/9/2007, at 15–16. As found by the Majority, the photo array presented to the victim by the police was not unduly suggestive. *See* Majority Op., at 590. Likewise, the jury found the victim's in-court identification of Crork based upon the proper photo array credible and convicted Crork. This evidence, of itself, was sufficient to tie Crork to the robbery. Consequently, the victim's identification of Crork *via* the single photograph of his tattoo was merely cumulative to the aforementioned properly-admitted identification testimony and evidence. Therefore, any prejudice resulting to Crork by virtue of the admission of the tattoo identification was, at best, harmless error and could not have contributed to the verdict entered against him. *See, e.g., Commonwealth v. Passmore,* 857 A.2d 697, 711 (Pa.Super.2004), *appeal denied,* 582 Pa. 673, 868 A.2d 1199 (2005) (erroneous admission of evidence is harmless error where evidence is merely cumulative to other substantially similar properly-admitted evidence). Accordingly, I join the Majority's affirmation of Crork's judgment of sentence.

¶ 3 However, I write separately to note my disagreement with the Majority's quick characterization of the photo of Crork's tattoo as a photo of an "inanimate object," and its resulting application of *Commonwealth v. Carter,* 271 Pa.Super. 508, 414

A.2d 369 (1979), and *Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501 (2005), in its analysis of Crork's tattoo photo suppression issue.

¶ 4 As recited by the Majority, in the *Stovall/Wade/Gilbert* trilogy, the United States Supreme Court set forth its constitutional concerns regarding the suggestivity of police identification procedures. *See* Majority Op., at 588 (*citing Chmiel,* at 585–86, 889 A.2d at 523–24). Police identification procedures used to identify an accused that are unduly suggestive to or coercive of an eyewitness deny the accused the due process of law. *Id.,* at 588 (*citing Chmiel,* at 585–86, 889 A.2d at 523–24).[2] However, this rule does not apply when the police present inanimate physical evidence, such as clothing or a vehicle, to an eyewitness to identify the accused. *Id.,* at 588 (*citing Chmiel,* at 585–86, 889 A.2d at 523–24).

¶ 5 Upon due reflection, I cannot, as does the Majority, classify a tattoo as an "inanimate object" and thereby apply *Carter, Chmiel,* and their progeny as an exception to *Stovall* in my consideration of this issue. It is true that the physical characteristics of persons in a lineup (including "voice lineups") or photo array need not match the prime suspect with exactitude, but it is also evident that physical characteristics such as scars, adult vocal characteristics, prostheses, hair styles, and the presence of or absence of facial hair are to be considered and employed by the police in their formulation of an appropriate objective lineup or photo array.

---

1. The victim described the tattoo as an "eagle with its arms raised, with the wings raised." *See* N.T. Suppression hearing, 7/9/2007, at 15.

2. I note additionally that, even if a police identification procedure is unduly suggestive, an eyewitness' identification of a suspect may be adjudged sufficiently reliable where the corrupting influence of the suggestive identification procedure is outweighed by the strength of the following factors: (1) the op-

portunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *See Commonwealth v. Richardson,* 347 Pa.Super. 564, 500 A.2d 1200, 1202 (1985) (citations omitted).

*See, e.g., Commonwealth v. Fisher,* 564 Pa. 505, 523, 769 A.2d 1116, 1126–27 (2001) (photo array not unduly suggestive where subjects exhibit **similar** characteristics and one photo does not stand out from others) (emphasis added); *see also Commonwealth v. Turner,* 237 Pa.Super. 201, 352 A.2d 68, 70–71 (1975) (for maximum fairness and best results, all participants in voice lineup should be of **similar** age, race, and build) (emphasis added). While one is not born with a tattoo, they are also not born with scars, adult vocal characteristics, prostheses, a hair style, facial hair, or any number of identifying markers that one acquires throughout the course of their life. Indeed, like scars, tattoos cannot be removed without surgery. Therefore, as each of the aforementioned identifying characteristics constitute vital parts of an individual that must factor into the formulation of an objective police lineup, I can find no basis for the Majority's distinction between the aforementioned acquired physical characteristics and tattoos in its due process analysis.

¶ 6 Consequently, as I cannot join in the Majority's utilization of the *Carter/Chmiel* "inanimate object" exception, I would find that, by its very nature, the displaying of a single photograph of a tattoo, like the displaying of a single facial photograph, would constitute an unduly suggestive identification procedure by the police. *Cf. Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (danger of misidentification increases where police show eyewitness only the picture of single individual that generally resembles person eyewitness saw committing crime).

¶ 7 Additionally, my research has uncovered only two appellate court cases from our sister jurisdictions of Missouri and Alabama that have considered the precise question before this Court, *i.e.,* whether the identification of a tattoo is unduly suggestive if the identifying witness is shown only the picture of a tattoo on a suspect's person. In *State v. Newcomb,* 934 S.W.2d 608 (Mo.Ct.App.1996), the Court of Appeals of Missouri held that the display of photographs of panther tattoos on a suspect's arm to a victim-eyewitness was not unduly suggestive. *Newcomb,* 934 S.W.2d at 610. The Court reached this holding due to its conclusions that a "tattoo photo array" was "totally impracticable" under the circumstances and could lead to further suggestivity in the identification procedure if dissimilar tattoos were displayed to the victim-eyewitness. *Id.,* 934 S.W.2d at 610. The Court also held that the hospitalization of the victim rendered the showing of the tattoo photographs to the victim-eyewitness the most reasonable procedure that could be employed by the police under the circumstances. *Newcomb,* 934 S.W.2d at 610. The Alabama Court of Criminal Appeals adopted the reasoning of *Newcomb* in *Belisle v. State,* —— So.3d ——, 2007 WL 625025 (Ala.Cr.App.2007), and held additionally that whatever error that could have accrued to the appellant was harmless, as the identifying eyewitness had an independent basis for identifying the appellant's tattoo in court. *Belisle,* —— So.3d at ——, 2007 WL 625025 at *29.

¶ 8 It is my belief that neither *Newcomb* nor *Belisle* provide much guidance in this Court's resolution of Crork's issue. First, my review of *Newcomb* and *Belisle* leads me to the conclusion that, in both cases, reversal on the basis of undue suggestivity was not warranted due to the certainty and accuracy of the eyewitness' initial description of the tattoos to the police in both cases. *See, e.g., Richardson,* 500 A.2d at 1202 (even if initial identification procedure of police was unduly suggestive, identification may be sufficiently reliable based on, *inter alia,* certainty and accuracy of identification by eyewitness). Further, the

essence of the *Stovall/Wade/Gilbert* trilogy and its progeny speaks to the principle that the minor burdens borne by the police in the process of reaching an objective identification process are generally outweighed by an accused's right against an unduly suggestive identification. *Cf. Turner*, 352 A.2d at 70–71 (for maximum fairness and best results, all participants in voice lineup should be of *similar* age, race, and build) (emphasis added). Therefore, I depart from the concerns of *Newcomb* and *Belisle* of the "impracticality" of a tattoo photo lineup. Consequently, in addition to my concern with the Majority's conclusion that a tattoo is an "inanimate object," I am, unlike the Majority, uncomfortable in crafting precedent for such a novel issue where this Court lacks substantial guidance from our sister jurisdictions on the issue.

¶ 9 As such, though I join in the Majority's affirmation of Crork's judgment of sentence, I must dissent respectfully from the Majority's analysis of Crork's tattoo identification issue and its resulting application of *Carter* and *Chmiel* to that issue.