**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 397 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 13, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003062-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 398 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003171-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 399 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003172-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 400 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003173-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 401 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003179-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FERDINAND CUEVAS-HEREDIA | : | |
| | : | |
| Appellant | : | No. 402 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004256-2021

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                                    **FILED: JULY 1, 2025**

Appellant, Ferdinand Cuevas-Heredia, appeals from the judgment of sentence entered on February 9, 2023, as made final by the denial of Appellant's post-sentence motions on June 21, 2023. We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case:

On December 16, 2022, [Appellant] pled guilty to charges stemming from the sexual assault of his wife, the attempted sexual assault of his mother-in-law, the rape of his daughter[, the sexual abuse of two minor girls,] and the solicitation to commit criminal homicide occurring after his arrest on the sexual abuse charges. At his guilty plea hearing, [Appellant] pled guilty in a non-negotiated plea agreement as follows:

Case Number 3171 of 2021

[Appellant pleaded guilty to: sexual assault, indecent assault by forcible compulsion, attempted sexual assault, and indecent assault by forcible compulsion.[1]]

The Commonwealth provided the following factual basis [for] the charges:

Throughout the course of their marriage, [Appellant] was physically and sexually abusive to his wife, [N.C.] Beginning in 2014, [N.C.] suspected that [Appellant] was having sexual relationships with other people and no longer wanted to engage in consensual sexual activity with him. [Appellant] became angry and forced [N.C.] to have vaginal and oral sex on multiple occasions. [Appellant] pulled [N.C.'s] hair, slapped her, hit her[,] and forced her head to his penis before forcing her to have vaginal and oral intercourse. [N.C.] thought that if she brought their toddler-aged child into bed with her, [Appellant] would not force her to engage in sexual

_____

[1] 18 Pa.C.S.A. §§ 3124.1, 3126(a)(2), 901(a), and 3126(a)(2), respectively.

- 3 -

activity. However, when [N.C.] would do that [Appellant] would take the child out of the room, put him back in his room and proceed to force vaginal or oral sex.

Over time, [N.C.] learned to stop putting up a fight for fear of worse physical abuse and stop[ped] resisting the unwanted sexual contact. This occurred in Pittston, Pennsylvania.

On February 4, 2014, [N.C.'s] mother, [C.T.], was staying with [Appellant] and [N.C.] in Pittston, Pennsylvania. [Appellant] came home to the house late at night intoxicated. [C.T.] was asleep on the couch and [Appellant] attempted to lift up her shirt and pull down her pants.

[C.T.] kicked and screamed and ran to her daughter's room and outside the house and called [911]. Police arrived and a report was made but the following day [C.T.] told police that she did not want to press charges because [Appellant] and her daughter were working on their relationship.

[N.T. Guilty Plea Hearing, 12/16/22, at 4-6].


Case Number 3172 of 2021

[Appellant pleaded guilty to: resisting arrest and driving with a suspended license.[2]] The factual basis provided to the [trial] court [was] as follows:

On July [13, 2021], officers located [Appellant] driving and attempted to effectuate an arrest on [the sexual assault charges]. After activating their lights and sirens, [Appellant] refused to pull over and stop his vehicle. [Appellant] ultimately pulled into a parking lot while the officers called for backup. [Appellant] got out of his car and became combative, refused arrest and struggled with officers until he was forcefully restrained and put into

_____

[2] 18 Pa.C.S.A. § 5104 and 75 Pa.C.S.A. § 1543(b)(1)(ii), respectively.

- 4 -

handcuffs. [Appellant] was driving with a suspended license.

[*Id.* at 7].

Case Number 3173 of 2021

[Appellant pleaded guilty to: rape of a child, involuntary deviate sexual intercourse with a child, indecent assault of a person less than 13, incest of a minor, and corruption of minors.[3]] The factual basis provided to the [trial] court [was] as follows:

From 2014 to 2018[, Appellant] sexually assaulted his biological daughter, V.Z., when she was a minor. [V.Z.] recounts that the abuse began shortly after her 11th birthday. [Appellant] left the house, returned home visibly intoxicated. [Appellant] got into a physical altercation with [V.Z.'s] stepmother, [N.C.], and [V.Z.] went upstairs to bed. She awoke to [Appellant] in her room slapping and punching her before he forced his penis into her vagina. [Appellant] covered her mouth and told her not to cry. The next incident of abuse occurred a month or two later and became increasingly frequent. [Appellant] forced his penis into [V.Z.'s] vagina and anus on multiple occasions. The incidents became so frequent that it was difficult [for V.Z.] to recount the number of times it occurred.

[*Id.* at 8-9.]

Case Number 3179 of 2021

[Appellant pleaded guilty to: aggravated indecent assault of a person less than 13 years of age, indecent assault of a person less than 13 years of age, attempted involuntary deviate sexual intercourse with a child, involuntary deviate

---

[3] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3126(a)(7), 4302(b)(1), and 6301(a)(1)(ii), respectively.

sexual intercourse of a person less than 16 years of age, indecent assault of a person less than 13 years of age, aggravated indecent assault of a person less than 13 years of age, and two counts of corruption of minors.[4]] The following factual basis was provided to the [trial] court:

J and C are twins [who were born in June 2007. They] had an uncle/cousin-type relationship with [Appellant]. When they were between the ages of six and eight, they would spend time at [Appellant's] home in Pittston[.] J. first reported that [Appellant] would come into the bathroom when she was using it, touch her legs, thighs, buttocks[,] and vagina. [Appellant] digitally penetrated her vagina on multiple occasions. On one occasion[,] J reported that [Appellant] . . . pulled down his pants and pushed her head toward the area of his penis. J reported that she said no but that [Appellant] kept forcing her head to his penis. At that point J reported that [Appellant's] wife started to come into the kitchen and he stopped. …

C reported that [Appellant] would touch her vagina, buttocks and legs. [Appellant] put his fingers inside of her vagina and would pull down his pants and force C to touch his penis. On one occasion [Appellant] put his penis in C's mouth. This happened consistently until J and C went to live with their father in New Jersey and stopped visiting [Appellant's] home.

[**Id.** at 10-12].

Case Number 4256 of 2021

[Appellant pleaded guilty to witness intimidation.[5]] The Commonwealth presented the following facts to the [trial] court to support the charge:

_____

[4] 18 Pa.C.S.A. §§ 3125(a)(7), 3126(a)(7), 901(a), 3123(a)(7), 3126(a)(7), 3125(a)(7), and 6301(a)(1)(ii), respectively.

[5] 18 Pa.C.S.A. § 4952(a)(3).

On October 1, 2021, [N.C.] received a letter from [Appellant] from the Luzerne County Correctional [F]acility. In the letter[, Appellant] told [N.C.] that if she dropped the charges, he would sign the outstanding divorce paperwork and pay her $20,000 in cash and she should tell the other victims to do the same.

[*Id.* at 12].


Case Number 3062 of 2022

[Appellant pleaded guilty to: three counts of solicitation to commit criminal homicide and two counts of attempted witness/victim intimidation.[6]]

Beginning in February of 2022, [Appellant] spoke in Luzerne County Correction Facility to other inmates that he wanted the witnesses in his case killed. An informant in the prison contacted the authorities because [Appellant] indicated that two of the individuals he wanted killed were minors. Authorities began to monitor [Appellant's] behavior and communication and provided a phone number through an informant should [Appellant] wish to hire a hit man. [Appellant] at first did not call that number. . . .

Following a hearing [in] this case, on September 7, 2022, [Appellant] returned to Luzerne County Correctional Facility erratic about the potential length of his sentence. He said that, quote something had to be done. [Appellant] then called the number provided to him which was to an undercover agent posing as a hit man. . . .

In a series of phone calls and letters between September 7, 2022 and September 19, 2022, [Appellant] indicated that he wanted three witnesses, [C.T., J.S., and C.S.,] killed prior to his trial which was set to begin on October 17, 2022. He provided locations for these witnesses. He further indicated that he wanted [V.Z. and N.C.] not

_____

[6] 18 Pa.C.S.A. §§ 902(a) and 901(a), respectively.

physically harmed, but held and talked to so they could not and would not appear in court. [Appellant] and [the] undercover agent arranged for a fee of [$20,000] to complete this task. [Appellant] was to pay $8,000 up front and $12,000 after the job was complete. On September 16, 2022, an individual acting on behalf of [Appellant] met the undercover agent at a predetermined location and handed him $8,000 in an envelope. That was placed into evidence.

[*Id.* at 13-14].

On February 9, 2023, [the trial court sentenced Appellant to serve an aggregate term of 40 to 89 years in prison.[7]]

Trial Court Opinion, 6/4/24, at 1-5 (some footnotes omitted).

Appellant's post-sentence motion was denied by operation of law on June 21, 2023. *See* Pa.R.Crim.P. 720(B)(3)(a). On February 15, 2024, the order denying Appellant's post-sentence motion was entered on the docket and, on March 15, 2024, Appellant filed a timely notice of appeal.[8] Appellant raises one claim to this Court:

In light of [Appellant's] rehabilitative needs, age, and background, did the trial court abuse its discretion and impose a sentence that is manifestly excessive because the court did not consider the relevant factors under the

---

[7] As Appellant acknowledges in his brief, all of his individual sentences fell within the standard range of the sentencing guidelines. However, the trial court ran many of the sentences consecutively to one another. *See* Appellant's Brief at 18; *see also* N.T. Sentencing Hearing, 2/9/23, at 25-29.

[8] "[T]he failure of the clerk of courts to issue an order on [June 21, 2023], deeming Appellant's post-sentence motions denied by operation of law, was a breakdown of the processes of the trial court." *See Commonwealth v. Khalil*, 806 A.2d 415, 420 (Pa. Super. 2002). Since Appellant filed his notice of appeal within 30 days of the date the order was finally entered on the docket, Appellant's notice of appeal was timely. *See id.*

- 8 -

Pennsylvania Sentencing Code and Guidelines and, even if he were to be paroled at his minimum term, the imposition of the sentence is *de facto* life?

Appellant's Brief at 7 (some capitalization omitted).

Appellant's claim on appeal challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." ***Commonwealth v. Ritchey***, 779 A.2d 1183, 1185 (Pa. Super. 2001). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. ***See*** 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. ***Id.***

As this Court explained:

[t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007).

Appellant claims that his aggregate sentence is manifestly excessive, as the trial court "failed to consider his rehabilitative needs and mitigating factors." Appellant's Brief at 14. As to this claim, Appellant filed a timely notice of appeal, raised the claim in his post-sentence motion, and properly

included a Rule 2119(f) statement in his brief. Therefore, we turn to the issue of whether Appellant's claim raises a substantial question.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. McKiel**, 629 A.2d 1012, 1013 (Pa. Super. 1993); **Commonwealth v. Goggins**, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. **Goggins**, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** at 727 (emphasis omitted).

Appellant contends that his sentence is excessive because the trial court failed to consider his rehabilitative needs and mitigating circumstances.[9]

---

[9] Within Appellant's brief, Appellant also appears to claim that his sentence is excessive simply because the trial court ran many of his standard-range sentences consecutively to one another. **See** Appellant's Brief at 18. Under our precedent, this particular claim does not raise a substantial question. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question") (emphasis omitted).

Under our precedent, Appellant's claim presents a substantial question, thus permitting our review. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa. Super. 2013) ("[a]ppellant's claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review"); *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question"); *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (holding: a claim that the appellant's sentence was unduly excessive, "together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question").[10]

We have explained:

> sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

---

[10] We note that we have also "held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Eline*, 940 A.2d 421, 435 (Pa. Super. 2007) (quotations, citations, and corrections omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (collecting cases). Nevertheless, in light of our conflicting precedent, we will review the merits of Appellant's discretionary aspects of sentencing claim.

- 11 -

*Commonwealth v. Crork*, 966 A.2d 585, 590 (Pa. Super. 2009) (quotation marks and citations omitted).

Appellant claims that the trial court failed to adequately consider the following factors: Appellant has a history of drug addiction and mental health issues; Appellant is in need of sex offender therapy; Appellant accepted responsibility in these cases by pleading guilty; and, Appellant was 45 years old at the time of sentencing and, thus, will receive a *de facto* life sentence. *See* Appellant's Brief at 18-19.

Appellant's discretionary aspect of sentencing claim fails because, during Appellant's sentencing hearing, the trial court expressly stated that it considered the pre-sentence investigation report. *See* N.T. Sentencing, 2/9/23, at 2-3 and 24. Given this fact, we must "presume that the sentencing judge was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). To be sure, our Supreme Court has held:

> A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that [sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a

- 12 -

meaningful fashion.  It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Id.*

Further, as the trial court explained in its opinion to this Court:

[In this case, the trial court] was aware of [Appellant's] prior record score of 1, which [it] considered together with all of the other mitigating factors detailed in the PSI.  At sentencing, [Appellant's] counsel discussed [Appellant's] drug addiction and mental health issues as well as his belief that [Appellant] demonstrated genuine remorse.  [The trial court] heard from both [Appellant] and his mother at the sentencing hearing.  [The trial court] reviewed the letters provided on [Appellant's] behalf.  [The trial court] also took into account [Appellant's] acceptance of responsibility in pleading guilty.  . . .

In [the trial court's] judgment, the imposition of an aggregate sentence of [40 to 89 years in prison] is an appropriate sentence in light of the circumstances presented[, including] the number and ages of the victims and [] the sheer breadth and magnitude of the offenses committed.  . . .

Here, there were six separate cases involving five different victims.  [Appellant] sexually assaulted his wife and forced her to have vaginal and oral sex on multiple occasions.  He attempted to sexually assault his mother-in-law.  He sexually assaulted his biological daughter for four years beginning shortly after her 11th birthday.  He slapped her, punched, her, raped her both vaginally and anally on multiple occasions and he engaged in this abusive behavior so many times that it was difficult for her to count the number of occurrences.  He also assaulted twin girls who were frequent visitors to his home when they were between the ages of six and eight, including touching them in a sexual manner and putting his fingers inside of their vaginas.

Furthermore, while he was in prison awaiting trial for the above crimes, [Appellant] plotted to relieve himself of any responsibility by attempting to convince his wife to drop the charges against him by offering to pay her $20,000.

- 13 -

> Remarkably, [Appellant] then actually engaged in hiring who he thought was a hit man, paying him to kill his mother-in-law and the twin girls and to intimidate his wife and daughter so that they would not be able to appear in court against him. [Appellant] even took the step of having a cash payment delivered to the "hit man" in order to effectuate the killings.

Trial Court Opinion, 6/4/24, at 11 and 14-15 (citations and emphasis omitted).

The trial court expressly considered Appellant's rehabilitative needs and mitigating circumstances when it imposed Appellant's sentence in this case. Appellant's claim to the contrary is thus belied by the record. As such, Appellant's claim on appeal fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/01/2025

- 14 -