J-S21031-25

2025 PA Super 237

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUINDELL CAMPBELL | : | |
| | : | |
| Appellant | : | No. 1172 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 22, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001547-2020

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.: **FILED OCTOBER 20, 2025**

Appellant, Quindell Campbell, appeals from the judgment of sentence following his open guilty plea to aggravated assault, rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion ("IDSI"), aggravated indecent assault by forcible compulsion, indecent assault by forcible compulsion, and recklessly endangering another person.[1] He challenges the sentencing court's exercise of discretion in imposing an aggregate term of thirteen to forty years' imprisonment, followed by three years' probation after a grant of reconsideration and a new evidentiary hearing. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 3121(a)(1), 3123(a)(1), 3125(a)(2), 3126(a)(2), and 2705, respectively.

Appellant agreed to the following material facts at his guilty plea proceeding on January 23, 2023:

> On Saturday, January 25, 2020 at, approximately, 5:20 [a.m.], the complainant … was on her way to work, … walking through Love Park [at 15th and Market Streets in Philadelphia] when she felt somebody behind her.
>
> When the complainant looked behind her, she saw a male in a … blue, white, and red[-]striped jacket with a fur hood[.] … That male proceeded to punch the complainant in the face, knocking her to the ground. He then got on top of her[,] and they struggled for a brief time.
>
> At that point the male removed the complainant's pants and told her that if she complied with him, he would not hurt her. The complainant screamed for help. The male then removed his own pants and penetrated her vagina with his penis against her will.
>
> The complainant and the male continued to struggle for many, many minutes. During that time, … the male penetrated the complainant's mouth with his penis multiple times and penetrated her vagina, switching back and forth, for over 14 minutes.
>
> The complainant screamed for help at which time two bystanders … heard her screams and called 911. … [D]uring the struggle [the male] digitally penetrated the complainant's vagina with his fingers against her will.
>
> Police Officer Carlos Dreyfus … arrived on scene in response to a radio call for a rape in progress. When he arrived at Love Park, he observed a male figure standing over a female figure in a striped coat and gave chase.
>
> At that time[,] the male fled[,] and Officer Dreyfus chased after him. The male went behind the glass structure at the entrance of [the 15th Street station], and Officer Dreyfus saw him behind the glass. [H]e approached the male and they struggled for between five and ten seconds.
>
> … Officer Dreyfus came face-to-face with him and was able to see that this male had … [a] light complexion, had dread locs, and was wearing a red, blue, and white[-]striped jacket with a fur hood[.]

The male then jumped, approximately, 25 feet from the 15th Street ledge and ran through the [mass transit] SEPTA concourses through the City Hall concourses in Center City[.] He was captured on surveillance video … on, approximately, 30 camera angles throughout the Center City concourse.

The male was seen in that same clothing that the complainant described; including a pair of [blue-and-white-patterned] boxers … that the complainant described to police. The male was also seen with white headphones coming out of his pocket and his penis was exposed as he ran through the concourse; and the complainant also described those white headphones and [the male] had his phone on him throughout the assault.

[The male exited the SEPTA concourses at Broad and Chestnut Streets, near the Ritz-Carlton Hotel, as depicted on video surveillance and escaped immediate apprehension. Police investigators did not know the male's identity but had descriptions that were consistent from multiple witnesses. The police also had videos from which they obtained still images of the offender, which were published at a press conference held on January 28, 2020. Following the conference, many tips were called into a tip line.]

[N]umerous tips identified the person in the video surveillance and still shots to be an individual by the name of Quindell Campbell who lives in the Olney section of Philadelphia[.]

One of those tips led detectives to Woody's Bar located on the 200 block of 13th Street in Philadelphia where they recovered video surveillance from an apartment building close by that showed a male with the same exact description, wearing the same clothing from the morning of the rape at, approximately, 1:00 [a.m.] That male also had [a] light complexion and dread locs and was wearing the same coat, [and] black and red sneakers …

Another tip led detectives to … Rick's Funeral Home where they recovered video footage from December 14th of 2019, of [Appellant,] wearing the same coat, the same shoes, fitting the same description as the rapist[,] attending a funeral that was held at that funeral home.

The detectives then included [Appellant] in a photo array. That photo array was shown to the complainant. She was unable to identify [Appellant]; however, that photo array was also shown to Officer Dreyfus – the officer who gave chase to [Appellant] – and

he did positively identify [Appellant] as the male who he saw raping the complainant in Love Park and [whom he pursued.]

That photo array was also shown to the tipster who called in the tip that [led] detectives to the funeral home and he also identified … the male that he knew to be Quindell [Campbell and attended the funeral].

After that[,] detectives executed a search warrant at [Appellant's] home. This was after they viewed all the video surveillance, including surveillance from Love Park itself. That footage captured the entire rape from beginning to end. In that footage[,] a flash is seen going off, which detectives believed was from a cell phone.

In that search warrant[,] detectives were looking for cell phones and anything of evidentiary value that may have been at [Appellant's] home. When they executed that search warrant, nobody was home, but they recovered numerous things inside the house, including a pair of white[-]and[-]blue[-]patterned boxers which matched the description that the complainant provided and also matched the video surveillance [from SEPTA in which the boxers were visible].

They recovered a pair of white headphones … with a cord on it that also matched the complainant's description of the headphones. They recovered a receipt from T-Mobile that had [Appellant's] name on it, his address, and a phone number […].

They also recovered a photograph of [Appellant], a W-2 form, some other paperwork, and a shoe box for a pair of Nike Infrared Retro Jordans Style 6, in a black and red box. The shoes were not in that box; however, after investigating what those shoes would have looked like, those shoes did match the shoes that the offender was seen wearing when he fled through the concourse.

[T]hey also recovered from [Appellant's] bedroom a program from the funeral that had occurred on December 14th of 2019. And the program matches the program that is seen in the footage from Rick's Funeral Home.

[While finishing the search, the detectives saw Appellant arrive at the home with his mother, and then leave.] Detective Daly and Detective Price followed [Appellant], who was on his phone at the time; and … recovered [Appellant's] cell phone from his person. That cell phone was an iPhone 11.

[By the time of apprehension, on February 1, 2020, Appellant did not have the dread locs that were visible in the video footage from SEPTA and the funeral home, and also in his driver's license photo and other photographs found in Appellant's home.]

Police recovered that cell phone and submitted it for forensic analysis. They also submitted a search warrant for the call detail records for that same phone number to T-Mobile.

Upon analysis by FBI Agent Bill [Schute], … the cell phone call detail records showed that [Appellant] had a phone call at 5:51 a.m. on January 25th of 2020, and … when he answered that phone call, his phone was connecting to a cell tower located at Broad and Chestnut Streets[.]

From the forensic analysis of the cell phone that was recovered from [Appellant's] person, it was found that [Appellant] had ordered an Uber at 5:47 [a.m. Police then obtained a search warrant for relevant Uber records]. The Uber records revealed that [Appellant] ordered an Uber to the Ritz-Carlton [in Center City at Broad and Chestnut Streets at 5:47 a.m.] … was picked up at 5:51 a.m.[,] and received a phone call from the Uber driver at that time.

The drop off location for that Uber was [Appellant's] residence, located [in the 5600 block of] North Howard Street in Philadelphia.

Further analysis of that cell phone showed numerous concerning searches, Google searches; including, Love Park rape, Philadelphia rape, Love Park rape Quindell Campbell, Love Park rape Jack – which detectives investigated and found to be [Appellant's nick-name] – can you erase fingerprints, how to change your name, jumped from high up and my foot hurts, and various other Google searches relating to the rape.

Of note is that many of these searches occurred before the press conference on January 28th of 2020, between January 25th and January 28th when the media had not yet been informed about this case and there was no news coverage of it at the time.

[Appellant] also sent numerous Snapchat messages, which were seen on the cell phone, to his friends, including messages saying that he had cut his hair off.

N.T. Guilty Plea, 1/23/23, 9-18. Exhibits, including the surveillance videos and material extracted from Appellant's cell phone, were entered into the record. *Id.*, 19. Appellant admitted the recited facts and entered his guilty pleas. *Id.*, 19-21. The court deferred sentencing and ordered a pre-sentence investigation report ("PSI"), mental health evaluation ("MHE"), and a Sex Offender Assessment Board ("SOAB") evaluation. *Id.*, 21.

The initial sentencing proceeding was held on June 21, 2023. Appellant had a prior record score of zero. Therefore, the Sentencing Guideline standard range for the minimum term of imprisonment was forty-eight to sixty-six months for the rape and IDSI convictions, with a mandatory consecutive probation of three years, and twenty-two to thirty-six months for the aggravated assault and aggravated indecent assault convictions. *See* Opinion, Ehrlich, J., 10/28/24 ("Trial Court Opinion"), 3.

> Upon considering the presentence and mental health reports, the sentencing guidelines, arguments from counsel, the evidence presented by the Commonwealth, Appellant's statement, the victim impact statement, Appellant's history, and the facts and circumstances of the case, [the court] sentenced Appellant to an aggregate term of thirteen (13) to forty (40) years of confinement, which included the following: five (5) to fifteen (15) years for Rape, a consecutive term of five (5) to fifteen (15) years for [IDSI], a consecutive term of three (3) to ten (10) years for Aggravated Assault, and a concurrent term of three (3) to ten (10) years for Aggravated Indecent Assault.

Trial Court Opinion, 4. In addition, Appellant was required to register as a Tier III sexual offender. *See id.*, 5; *see also* 42 Pa.C.S. § 9799.14(d)

On June 30, 2023, Appellant filed a timely post-sentence motion. **See** Appellant's Post-Sentence Motion to Modify Sentence, 6/30/23. In pertinent part, Appellant sought reconsideration of his sentence because the court indicated it believed that, based on "pornographic rape scenes" extracted from Appellant's cell phone, Appellant "may have been acting out some type of fantasy," but the video evidence had not been shared with counsel and no expert testimony was proffered to show that such videos "would cause a person to act out such a fantasy," and he was not found to be a sexually violent predator. **Id.**, ¶ 4(a-d). He also alleged the court failed to consider the Sentencing Guidelines, and "failed to adequately consider [his] age, family history, education, employment history, remorse," and cooperation. **Id.**, ¶¶ 4(e), 5.

The court granted reconsideration and vacated its initial sentence. The hearing was held on March 22, 2024. The Commonwealth presented FBI Agent Daniel Johns to testify to the analysis and extraction of evidence showing that Appellant used his cell phone to locate on the internet pornographic videos depicting rape scenes sometime prior to February 2, 2020, when the cell phone was seized. **See** N.T. Sentencing Reconsideration, 3/22/24, 9-20. Appellant argued that it was the Commonwealth's obligation to prove that he looked for the videos prior to the incident in order to prove planning. **See id.**, 31. However, the Commonwealth only argued that the relevance of the searches was that they showed Appellant was the type of person who was interested in viewing sexual violence. **See id.** Appellant then argued that the

Commonwealth had not proven either that he was the person who searched for the videos on his cell phone or that he watched them. *See id.*, 31-32. Immediately following that argument, however, Appellant testified that he in fact had conducted the searches on his cell phone, but asserted he did so only "[a]fter the incident." *Id.*, 36. He conceded that he may have watched the videos as well, but insisted it was while he was "drunk," and only to seek affirmation that he was "wasn't a monster." *Id.*, 39-40.

Appellant's mother also testified. She explained that she raised Appellant and his sister as a single parent and that she had been raped multiple times. *See* N.T. Sentencing Reconsideration, 3/22/24, 54-55. She explained Appellant had been a well-behaved child and that problems arose only after he began drinking. *See id.*, 55. She explained that, like Appellant, she also had a substance abuse problem and had blackout periods when she could not remember what she had done. *See id.*, 56. She asserted that Appellant's crime caused her own trauma to resurface, but she is convinced it was the alcohol that led him to do it, "because that's not who he is." *Id.*, 57.

The Commonwealth argued that the specific claims raised by Appellant in the post-sentence motion were now addressed: the searches were proven to have been found on his cell phone; and the video search evidence, which was submitted at the time of the guilty plea, had been made available to the defense. *See* N.T. Sentencing Reconsideration, 3/22/24, 59. It then explained that the video searches on Appellant's cell phone were "concerning" on their own, regardless of whether the searches were made prior to or after the

incident. *Id.*, 60. It shows Appellant's continuing interest in rape, submitting that Appellant's explanations for the searches, were not "convincing," and, instead, showed Appellant "was aware of what he did," in contrast to his claims of intoxication, because he used search terms directly related to the incident itself. *See id.*, 60-61. It then pointed out that the surveillance video of the incident demonstrated the level of violence of the incident: Appellant punched the victim, knocked her down, got on top of her, "and then for the next 14 minutes violate[d] her in every which way." *Id.*, 61. It also pointed out that Appellant's lack of a prior record was established at the first sentencing hearing, and that his mother had spoken then as well. *See id.*, 62. It argued there were no changed circumstances to warrant a reduction in the aggregate sentence. *See id.* "In fact, I think from this motion and from the testimony that we've heard, there's actually less of the acceptance of responsibility than there was" at the initial sentencing. The Commonwealth requested the court reimpose the original sentence. *Id.*

In his allocution, Appellant explained that "how [he] perceived [his] actions at the time was different than how it was being stated," and that he had conducted the phone searches to convince himself he "wasn't the monster that was being broadcast on the news at the time." N.T. Sentencing Reconsideration, 3/22/24, 63. He expressed he was "very sorry for [his] actions" and hoped "to be given a real second chance." *Id.*

The court then reviewed the evidence it heard on reconsideration. Of particular significance to this appeal, it stated:

The searches afterwards to see if you were a monster, I frankly don't understand why you would search rape in the woods or the other stuff on Pornhub. I'm sure you were raised, especially with what your mother said to me in court, how bad rape is and how bad it is to do that to another person and one of the most personal violations and how it affects people the rest of their lives, as your mother spoke about today.

The fact that you would search that was one factor I took into account. *The main factor I took into account was the incident itself, what happened, what happened afterwards*.

The danger that somebody poses who attacks a stranger in public in circumstances like this is immense. There are very few cases actually like this, fortunately. Any rape is bad; but this was captured on video because of where it occurred. So we actually got to see it unfolding. And based on everything I saw, everything I heard, the [PSI, and the MHE,] I believe that you pose a danger; and because of that[,] I gave you the sentence I gave you and I have not heard really anything today to make me change.

N.T. Sentencing Reconsideration, 3/22/24, 64-65 (emphasis supplied).

Accordingly, the sentencing court reimposed its original sentence terms, consecutive terms of imprisonment of: 5 to 15 years on each of the rape and IDSI convictions; and of 3 to 10 years on the aggravated assault conviction. *Id.*, 65. In addition, the court imposed the mandatory three-year term of consecutive probation. *Id.*, 68; *see also* Re-Sentencing Order, 3/22/24.

Appellant, through counsel, filed a timely notice of appeal on April 19, 2024.[2] Subsequently, Appellant filed a *pro se* request for sentencing counsel to be removed, which was followed by a formal motion from counsel for leave to withdraw. On May 9, 2024, the sentencing court granted leave to counsel

_____

[2] Appellant also filed a *pro se* notice of appeal on the same date, April 19, 2024. That appeal was docketed at 1293 EDA 2024. It was subsequently dismissed as duplicative by an order of this Court on October 11, 2024.

to withdraw from representation and directed that new counsel would be appointed and given additional time to file a Statement of Errors Complained of on Appeal pursuant to Rule of Appellate Procedure 1925(b). **See** Order, 5/9/24; Pa.R.A.P. 1925(b).

New counsel timely filed the Rule 1925(b) Statement, raising one issue for appeal. **See** Appellant's Rule 1925(b) Statement, 6/10/24. That issue is identical to the single issue raised in his brief:

> Whether the sentencing court violated the discretionary aspects of sentencing in relying on the improper factor of undated pornographic searches on a cell phone in fashioning [Appellant's] sentence.

Appellant's Brief, 6.

This appeal challenges the discretionary aspects of Appellant's sentence. Discretionary sentencing claims are not appealable as of right. **See Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. **See Commonwealth v. Miller**, 275 A.3d 530, 534 (Pa.

- 11 -

Super. 2022), ***appeal denied***, 302 A.2d 626 (Pa. 2023). An appellant must satisfy all four requirements. ***Id.***

Here, Appellant complied fully with the first three requirements for merits review of his appellate claim. Therefore, we now turn to whether Appellant established a substantial question for review. We make the determination on a case-by-case basis. ***Commonwealth v. Crawford***, 257 A.3d 75, 78 (Pa. Super. 2021). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." ***Id.*** at 78-79 (*quoting* ***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018)) (brackets omitted). A substantial question is presented where:

> … an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

***Commonwealth v. Mastromarino***, 2 A.3d 581, 585–586 (Pa. Super. 2010) (*quoting* ***Commonwealth v. Bullock****,* 948 A.2d 818, 826 n.6 (Pa. Super. 2008)) (citation omitted).

Appellant asserts that a "claim that the sentencing court considered improper factors in fashioning its sentence implicates the discretionary aspects of sentencing." Appellant's Brief, 8. As support, Appellant cites ***Commonwealth v. Bowen***, 975 A.2d 1120, 1122 (Pa. Super. 2009) (holding that a substantial question exists "when appellant alleged that sentencing

- 12 -

court considered improper factors when sentencing in aggravated range"). We find that Appellant's assertion raises a colorable argument that the sentence imposed is contrary to the fundamental norms which underlie the sentencing process.[3] *See Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018) (finding a substantial question by interpreting the appellant's "Rule 2119(f) statement essentially to assert that … the trial court considered improper factors"); *Commonwealth v. Downing*, 990 A.2d 788, 792 (2010) (concluding "Appellant's claim the trial court relied on an improper factor raises a substantial question permitting review" an aggravated range sentence).

However, the question Appellant raises is a narrow one. In light of our below discussion of the standard of review under *Commonwealth v. Smith*,

---

[3] Appellant does not allege that the sentence imposed was unreasonable, an assertion that is necessary for finding a substantial question based on the weight given to proper sentencing factors and also a requirement for relief. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014); 42 Pa.C.S. § 9781(c)(2). Consistent with those requirements, this Court has held that a substantial question exists where the appellant alleges the sentence is both unreasonable and based on an improper factor. *See Commonwealth v. Daniel,* 30 A.3d 494, 497 (Pa. Super. 2011) (holding the Commonwealth's allegations, *inter alia,* that a sentence "was unreasonably lenient, was dependent upon improper factors ..., [and] disregarded the serious nature of the offenses," posed a substantial question for review). At least one time this Court has found a substantial question was raised where the appellant alleged the trial court imposed a "manifestly excessive sentence" at the top of the standard range and "relied on an impermissible factor." *Commonwealth v. Roden*, 730 A.2d 995, 996 (Pa. Super. 1999). However, we did not hold that both allegations were necessary in *Roden*.

673 A.2d 893, 896 (Pa. 1996), we hold that the bare assertion that the court considered an improper sentencing factor states a substantial question where the impermissible factor punishes the exercise of a constitutional right. In that instance, relief may be granted simply because it reasonably appears the sentencing court may have done so. *Id.* The question does not extend to a sentencing court's consideration of any other impermissible factor or to the sentencing court's balancing of multiple factors. In these two instances, our review requires us to analyze all of the sentencing factors considered and determine whether the sentence imposed was clearly unreasonable. *See* 42 Pa.C.S. § 9781(c)(2). Appellant has not asked us to undertake such extended review.

We now turn to a substantive review of the sentencing court's exercise of its discretion. Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (citations omitted).

Additionally, our review is confined by statutory mandate. *See Johnson*, 125 A.3d at 826-27. Specifically, we may only vacate and remand for resentencing, here, if the sentencing court's application of a guideline

sentence term was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).[4] "[I]t is clear that the General Assembly intended the concept of unreasonableness [for the purposes of Section 9781(c)] to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." **Commonwealth v. Walls**, 926 A.2d 957, 963 (Pa. 2007).

Appellant argues that a sentence "is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration," as a violation of the right to due process. Appellant's Brief, 9. He contends that "it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration," but only that "it reasonably appears from the record that the trial court relied in whole or in part upon such a factor." **Id.**, 10. He asserts that "imposing a sentence, in part, because somebody searches for adult pornography harkens back to the obscenity prosecutions which were discarded by the Pennsylvania Supreme Court as violative of the First Amendment over fifty years ago." **Id.** Acknowledging that the Sentencing Code directs a sentencing court to, *inter alia*, consider "the history, character, and condition of the defendant," he

---

[4] The sentence terms imposed were all within the Sentencing Guidelines ranges. The minimum sentence terms for the rape and IDSI convictions were within the standard range of the Sentencing Guidelines, and for the aggravated assault and aggravated indecent assault convictions were at the top of the standard range. **See** Trial Court Opinion, 3.

asserts that "[a]t no point does [it] discuss adult pornographic searches found on a cell phone." *Id.*, 10-11.

Appellant then notes, that "[d]espite the [S]entencing [C]ode's silence on pornographic searches," the court considered the searches as a factor in sentencing, as evidenced by the Commonwealth's argument that his searches for "rape porn" were an issue of "paramount concern" and the sentencing court's reference to "watching pornography" in its statement of reasons for imposing the *initial* sentence. Appellant's Brief, 11-12. He then argues that in reimposing the same sentence after the reconsideration hearing, the sentencing court "confirmed that [it] was relying, at least in part, on the pornographic searches," requiring that the sentence imposed be vacated. *Id.*, 15. In support of his argument that relying in any part on an improper factor invalidates a sentence, Appellant cites the recent Pennsylvania Supreme Court decision in *Commonwealth v. Berry*, 323 A.3d 641 (Pa. 2024), which held that past arrests that do not lead to convictions cannot be used as a sentencing factor and on that ground vacated the sentence. *Id.*, 15-16. Appellant specifically argues that, here, as in *Berry*, "the sentencing court similarly relied upon unproven conduct in sentencing" him. *Id.*, 16.

We turn first to Appellant's argument that we must vacate his sentence if we find that the sentencing court considered an improper factor in *any* part. Appellant relies on this Court's decision in *Commonwealth v. Scott*, 860 A.2d 1029, 1030 (Pa. Super. 2004), which, citing *Commonwealth v. Schwartz*, 418 A.2d 637, 638 (Pa. Super. 1980), states "it is sufficient to

render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon" an impermissible factor. Notably, ***Schwartz*** quoted ***Commonwealth v. Bethea***, 379 A.2d 102, 106-107 (Pa. 1977), for the standard. ***See Schwartz***, 418 A.2d at 114. In ***Bethea***, the sentencing court explicitly imposed a more severe sentence because the defendant had exercised his constitutional right to a trial rather than entering a guilty plea. ***See Bethea***, 379 A.2d at 106-107. However, since then, the Pennsylvania Supreme Court limited its holding:

> The application of [] ***Bethea*** is limited to the narrow category of cases in which a trial court impermissibly penalizes a defendant for exercising constitutional rights. ***Bethea*** does not affect every case in which an impermissible sentencing factor is considered. Indeed, such an expansive interpretation of ***Bethea*** would directly undermine Section 9781(c)(3) of the [S]entencing [C]ode which requires an appellate court to affirm a sentence which falls outside of the sentencing guidelines unless the sentence is "unreasonable."

***Commonwealth v. Smith***, 673 A.2d 893, 896 (Pa. 1996). ***See also Commonwealth v. Crork***, 966 A.2d 585, 591 (Pa. Super. 2009) (stating that even if sentencing court's consideration of Crork's "history of prior offenses" could be considered to be reliance on an improper factor, "it certainly was not the sole factor employed by the trial court in fashioning Crork's sentence, thus no abuse of discretion occurred"); ***Commonwealth v. Sheller***, 961 A.2d 187, 192 (Pa. Super. 2008) ("Even if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines").

Informed by **Smith**, we now examine whether Appellant's argument raises a claim that he was punished for exercising a constitutional right. Appellant argues that the internet searches for rape pornography were impermissible sentencing factors to consider because they were supposedly unproven conduct. **See** Appellant's Brief, 15-16. Alleging that a sentencing court relied on unproven conduct does not equate to an assertion that Appellant was punished for exercising a constitutional right. **See Smith**, 673 A.2.d at 896. Appellant additionally asserts that his argument that searching for pornography on the internet is an impermissible factor, as unproven conduct, is particularly salient "where, as here, [it] implicates a defendant's First Amendment rights." **Id.**, 16. He then cites a United States Supreme Court case for the proposition that "a state has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." **Id.**[5] Appellant does not assert that he was punished for exercising that

_____

[5] Appellant cites **Stanley v. Georgia**, 394 U.S. 557, 565 (1969). **See** Appellant's Brief, 16. In **Stanley**, the United States Supreme Court held that the "mere private possession of obscene matter cannot constitutionally be made a crime." **Stanley**, 394 U.S. at 559. Notably, since then, the Court has stated that "[t]his much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment." **Miller v. California**, 413 U.S. 15, 23 & 24 (1973) (defining obscene material as lacking "serious literary, artistic, political, or scientific value"). However, we need not drill into First Amendment obscenity law where Appellant has merely suggested the court's sentencing generally touched on a possible First Amendment right. It is enough, here, for us to hold that Appellant did not allege he was punished for exercising any such right. Importantly, the Commonwealth did not charge him with any crime resulting from the searches.

constitutional right – here, to watch (or search for) pornography – only that the court's consideration necessarily touched upon a constitutional right. We note that the potential "chilling" of a First Amendment right is a violation of the First Amendment. Nevertheless, Appellant has not alleged, much less demonstrated, that the sentencing court's consideration of his (assumed) constitutional right to watch pornography caused an "injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." **Uniontown Newspapers Inc., v. Roberts**, 839 A.2d 185, 198 (Pa. 2003) (one of three requirements for showing governmental retaliation aimed at chilling First Amendment rights).

We conclude that it does not reasonably appear from the record that the sentencing court considered punishing Appellant for the exercise of his right to watch pornography generally. Rather, the court clearly tied "appellant's consumption of [] violent pornography" to the "'violent' and 'horrific' nature of the incident itself." Trial Court Opinion, 6. That Appellant searched for pornographic videos related to his violent rape was relevant to both his rehabilitative needs, under 42 Pa.C.S. § 9721(b), and his "history, character, and condition," under *id*. at § 9725, which were undoubtedly appropriate considerations for sentencing. Our review of the record confirms that Appellant has not established that the sentencing court imposed or considered imposing punishment for his exercise of a constitutional right. Therefore, we are not required to vacate the sentence simply because the sentencing court explicitly considered as a factor Appellant's searches for rape pornography on

the internet. **See Smith**, 673 A.2d at 896. The limited claim for which we granted review is therefore meritless.

Moreover, Appellant's primary claim, that his searches for rape pornography were an impermissible factor for sentencing under **Berry** because they were "unproven conduct" is misguided for two reasons. First, the conduct was not unproven. Appellant *admitted* that he conducted the searches seeking pornography featuring rape that the Commonwealth extracted from his cell phone. **See** N.T. Sentencing Reconsideration, 3/22/24, 36. He contested only the timing of the searches, which he testified were made after the incident and not before. **See id.**

Second, **Berry** does not prohibit consideration of proven internet searches conducted soon after the commission of a crime that are substantively connected to the crime and are probative of statutory sentencing considerations of both Appellant's rehabilitative needs and his "history, character, and condition." 42 Pa.C.S. §§ 9721(b), 9725. The issue in **Berry** was whether a sentencing court could consider arrests that "did not result either in juvenile adjudications or adult convictions." **Berry**, 323 A.3d at 643.[6] The Supreme Court determined that such "prior arrests are not probative at a sentencing hearing and *are not otherwise relevant to the factors that are*

_____

[6] The unproven conduct in **Berry** was not the arrest but the basis, if any, for the arrest. **See Berry**, 323 A.3d at 655. The Supreme Court explicitly did not reach the issue of whether a sentencing court may consider "a prior arrest where the facts underlying the arrest are established by a preponderance of the evidence." **Id**. at 656.

*central to the sentencing determination*." ***Id.*** at 651 (emphasis supplied). It held that "the sentencing court committed an error of law when it relied upon prior arrests as a sentencing factor[.]" ***Id***. at 654. In other words, the fact of an *arrest*, proven or unproven, is simply not relevant to sentencing. ***See id.***, at 648; ***see also Commonwealth v. Fitzgerald***, --- A.3d ---, 2025 WL 2315296, *4-5 (Pa. Super., filed, Aug. 12, 2025) (1229 EDA 2024) (published opinion discussing ***Berry***). Appellant's purported expansion of ***Berry*** to forbid as a consideration for sentencing his admitted searches for rape pornography, prior to, or in the aftermath of, his admitted violent rape of a stranger in public is contrary to the explicit holding and discussion in ***Berry***. The sentencing court addressed proven conduct relevant to statutory sentencing considerations; Appellant was not arrested for searching for rape pornography, which arrest alone would not have been relevant to sentencing under ***Berry***.

Thus, Appellant did not establish that the court considered an impermissible factor at all. As a result, the only viable sentencing claim would be one that Appellant did not present to us, whether the sentence imposed was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Even if his substantial question could be construed to encompass such a claim, however, we would still affirm.

In deciding whether a sentencing court imposed a sentence that was clearly unreasonable, we are guided by the considerations listed in 42 Pa.C.S. § 9781(d) – that is, the nature and circumstances of the offense and the

history and characteristics of the defendant; the opportunity of the sentencing court to observe the defendant, including any presentence investigation; the findings upon which the sentence was based; and the recommendations of the Sentencing Guidelines – and we review whether the trial court properly considered the sentencing factors outlined in 42 Pa.C.S. § 9721(b) – the protection of the public, the gravity of the offense with respect to the victim and the community, and the rehabilitative needs of the defendant. *See Walls*, 926 A.2d at 964; *Commonwealth v. Velez*, 273 A.3d 6, 12 (Pa. Super. 2022). "[T]he weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa. Super. 2024); *Velez*, 273 A.3d at 10 (similar).[7] Where, as here, the sentencing court had a PSI, "it is presumed the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Baker*, 311 A.3d at 19 (internal quotation marks and citation omitted); *Velez*, 273 A.3d at 10 (similar).

_____

[7] *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (appellate court cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating and aggravating factors). In the same vein, we cannot conclude that sentencing in the standard range of the Sentencing Guidelines was an abuse of discretion where, as here, the court was fully apprised of Appellant's circumstances through the PSI and MHE reports and the evidence presented at the initial sentencing and reconsideration. *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (when a court has a PSI report we are required to presume that it weighed the pertinent sentencing considerations).

The sentencing court explained its decision thusly:

… this Court articulated its concern regarding the circumstances of Appellant's offense. Primarily[,] this Court emphasized the violent nature of Appellant's sexual assault of [the complainant], and the fact that Appellant had committed such an act against a stranger in a public location. …

Before issuing Appellant's sentence, this Court also stated its consideration of Appellant's prior record, [PSI, MHE and SOAB evaluation]. This Court expressed further concern that Appellant had no prior record and that there was no indication of any mental health concerns, personal life challenges, or family circumstances that could explain Appellant's attack. Regarding Appellant's [SOAB] evaluation, this Court questioned Appellant's full acceptance of responsibility, as the report indicated that Appellant had characterized portions of the encounter as consensual. This Court, thus, found that Appellant posed an "immense" danger to the public, and fashioned [an aggregate] sentence outside of the Sentencing Guidelines — which this Court also considered in crafting Appellant's sentence — to ensure the protection of the public, and the prevention of subsequent incidents.

Additionally, this Court considered Appellant's consumption of violent pornography in fashioning Appellant's sentence. … At Appellant's reconsideration hearing, the Commonwealth called Agent Daniel Johns who testified to extracting the data from Appellant's cellphone and finding evidence that Appellant had both searched for and visited websites depicting rape-related pornography. Appellant's counsel challenged the relevancy of the evidence because the extraction did not produce specific dates and times of when Appellant visited these websites, and, therefore, did not lend to Appellant forming a "preconceived plan" which he then enacted in his attack []. However, this Court clarified that the inference it drew from the proffered evidence was that these searches, regardless of whether they occurred before or after the assault, "indicate[d] an interest in assaulting women." [T]his Court is permitted to make such reasonable inferences, when supported by the record and the proffered evidence. ***Commonwealth v. Downing***, 990 A.2d 788, 793 (Pa. Super. 2010).

Trial Court Opinion, 11-12.

Our review of the record indicates that the sentencing court did not abuse its discretion, as a separate and independent basis to affirm. The record shows that the court was aware of and considered the facts of the crime and Appellant's rehabilitative needs and background. *See* N.T. Sentencing Reconsideration, 7/11/24, 64-67. The court did not apply the guidelines erroneously, and the application of Sentencing Guidelines – in this case, imposing consecutive standard range sentence terms – was not "clearly unreasonable." 42 Pa.C.S. § 9781(c)(1), (2).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2025