J-S15003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID BALOSA | : | |
| | : | |
| Appellant | : | No. 1206 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 15, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005765-2023

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED MAY 15, 2026**

Appellant, David Balosa, appeals from the judgment of sentence entered

on April 15, 2025.  We affirm.

The trial court ably summarized the underlying facts and procedural

posture of this case:

> In 1998, [Appellant], then 37 years old, sexually assaulted
> S.P., then six years old, in the basement of her family's house
> in Philadelphia, Pennsylvania.  At that time, [Appellant], an
> Angolan national and newly-arrived immigrant to the U.S.,
> was a houseguest of S.P.'s parents.  He had sleeping
> accommodations in the basement of the family's house.
> [Appellant] and S.P.'s family shared the same religious faith.
>
> On the day of the incident, S.P. and her family had just
> returned home after attending a religious service.  S.P. went
> down to the basement by herself to say "hi" to [Appellant]
> since he had not accompanied them to the service.  S.P. was
> wearing a pink dress, and [Appellant], who was sitting on a

_____

[*] Former Justice specially assigned to the Superior Court.

chair by a desk, complimented her on how pretty she looked that day. [Appellant] lifted S.P. onto his left leg. He caressed her knee and leg. He then ran his hand up S.P.'s left thigh, into her underwear, and inserted his finger into her vagina. He simultaneously moved S.P.'s right hand onto his thigh and towards his groin. He then asked S.P. if she liked what he was doing. S.P. said "ouch" because the insertion of his finger into her vagina hurt.

[Appellant] then attempted to insert a second finger into S.P.'s vagina, but that caused her to experience "excruciating pain." She jumped off his lap and screamed "ouch" again. At that point, [Appellant] told S.P. not to tell anybody about what just happened.

S.P. ran upstairs with the intention of telling her mother about how [Appellant] just assaulted her. However, as soon as S.P. got to the top of the stairs, her mother asked her if she was coming up from the basement, and told her that she should never be alone with another adult. That frightened S.P. She felt as though her mother was chastising her for going downstairs alone. She "immediately felt guilty, dirty, and like [she] was going to get in trouble at th[at] point if she said something." Consequently, S.P. did not tell her mother anything.

Even after [Appellant] was no longer a guest in S.P.'s house, he would regularly visit S.P.'s family, sometimes unannounced. During those visits, [Appellant] would make S.P. uncomfortable. He would try to intimidate her by licking his lips and looking right into her eyes, and then he would kiss her so she could feel his wet lips on her cheek. He would also caress her lower back or her knee when her parents were not nearby. He never did those things to anybody else in S.P.'s family. [Appellant] was also S.P.'s French tutor for a while. During the tutoring sessions, he often made S.P. sit next to him.

S.P. did not tell anybody what [Appellant] did to her because she was humiliated and scared. In 2007, at the age of 15, she told her parents. Shortly thereafter, she told her best friend. She also told her husband in 2017 or 2018 when they were dating.

She told her father about the sexual assault because "it just felt unbearable" not to get it off her chest. Her father immediately had S.P. also tell her mother. They had her go [to her] bedroom for a while. When they called her downstairs, [Appellant] was present. S.P.'s father confronted [Appellant]. [Appellant] denied knowing what they were talking about. S.P.'s father asked S.P. to tell [Appellant] what he did to her, and she recounted the abuse. After which, [Appellant] got down on his knees crying, begging, and saying he was sorry. [Appellant] left shortly thereafter without denying S.P.'s accusations.

S.P.'s father subsequently called the elders of [Appellant's] religious congregation to report his behavior. He was told they would "handle the matter accordingly." The elders later informed S.P.'s father that they were "handling the issue." S.P.'s father chose to call only the elders, not the police, based upon his experiences living in Angola, where he perceived police to be untrustworthy and corrupt.

In 2023, the Pennsylvania Attorney General's Office (AGO) contacted S.P. about the 1998 sexual assault by [Appellant]. The AGO learned of the incident with S.P. during a statewide investigation of [Appellant's] religious congregation. In 2023, S.P. met with the AGO at their request, and, shortly thereafter, she testified before an investigative grand jury.

. . .

[Appellant] was charged with [aggravated indecent assault without consent, corruption of a minor, indecent assault without consent, aggravated indecent assault of a person less than 13 years old, and indecent assault of a person less than 13 years old.[1]]. A jury trial was held from March 13-18, 2024 which ended in a mistrial due to a hung jury. A second jury trial was held from September 11-16, 2024. [Appellant] testified in his own defense and denied the incident ever occurred. He also explained that the apology he gave when confronted by S.P. and her parents was intended as a general

---

[1] 18 Pa.C.S.A. §§ 3125(a)(1), 6301(a)(1), 3126(a)(1), 3125(a)(7), and 3126(a)(7), respectively.

- 3 -

statement of compassion, not as a confession. [Appellant] was found guilty of all charges.

In preparation for sentencing, the [trial court] ordered a pre-sentence investigation (PSI) and an SOAB Assessment. The Commonwealth decided not to pursue a sexually violent predator (SVP) determination. A sentencing hearing was then conducted after which [Appellant] was sentenced to an aggregate term of 22 to 44 months of incarceration followed by six years of mandatory reporting probation. . . .

[Appellant] filed a post-sentence motion which contained a motion for judgment of acquittal as to all charges, a motion for new trial as to all counts, arguing the jury's verdict is against the weight of the evidence, and a motion to reconsider sentence. After an April 15, 2025, hearing, the [trial court] granted in part the motion for reconsideration of sentence. [Specifically, the] probation sentence for Count 3 (indecent assault without consent) was vacated as exceeding the statutory maximum.

Trial Court Opinion, 8/26/25, at 1-5 (citations and footnotes omitted).

Appellant filed a timely notice of appeal. He raises two claims on appeal:

[1.] Whether the trial court erred when it abused its discretion and sentenced [Appellant] to a term of incarceration which was unreasonable and manifestly excessive for aggravated indecent assault [], indecent assault [], and corruption of minors, as there was a considerable amount of mitigating evidence presented at sentencing and [Appellant] had no prior criminal record?

[2.] Whether the trial court erred when it found [Appellant] guilty of aggravated indecent assault [], indecent assault [], and corruption of minors, as a considerable amount of good character evidence was presented at trial and evidence of good character may by itself raise a reasonable doubt of guilt and justify a verdict of not guilty?

Appellant's Brief at 4.

Appellant first claims that his sentence is manifestly excessive. Appellant's claim on appeal challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of her sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

Appellant claims that the trial court abused its discretion when it sentenced him to serve an aggregate term of 22 to 44 months in prison, followed by six years of probation, for his crimes. *See* Appellant's Brief at 11. According to Appellant the trial court erroneously failed to take into account the "considerable amount of mitigating evidence presented at sentencing,"

- 5 -

including the fact that he "had no prior criminal record." ***See*** Appellant's Brief at 14.

As to this claim, Appellant filed a timely notice of appeal, raised the claim in his post-sentence motion,[2] and properly included a Rule 2119(f) statement in his brief. Therefore, we turn to the issue of whether Appellant's claim raises a substantial question.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with

_____

[2] Appellant was originally sentenced on January 27, 2025, to serve an aggregate term of 22 to 44 months in prison, followed by six years of probation. ***See*** Order Of Sentence, 1/27/25, at 1-3. Appellant then filed a timely post-sentence motion, where he claimed that his aggregate sentence was manifestly excessive, as the trial court failed to consider the mitigating circumstances of his case. ***See*** Appellant's Post-Sentence Motion, 2/2/25, at 2. On April 15, 2025, the trial court granted, in part, and denied, in part, Appellant's post-sentence motion. In particular, the trial court vacated the probationary sentence on count three, as exceeding the statutory maximum penalty. Trial Court Order, 4/15/25, at 1. The trial court otherwise denied Appellant's post-sentence motion and did not alter Appellant's aggregate sentencing term. ***See id.***

As we have explained, generally, "[w]here a post-sentence motion is granted and a new sentence is then imposed, a challenge to the discretionary aspects of the new sentence must be preserved either through a second post-sentence motion or at the time of the resentencing." ***Commonwealth v. Perzel***, 291 A.3d 38, 47 (Pa. Super. 2023). Here, although the trial court's April 15, 2025 order amended Appellant's judgment of sentence, the order did not alter Appellant's aggregate sentence of 22 to 44 months in prison, followed by six years of probation. Since Appellant's initial post-sentence motion challenged his aggregate term of incarceration as manifestly excessive, and since the trial court denied this challenge in its April 15, 2025 order, we conclude that Appellant properly preserved his discretionary aspect of sentencing challenge in his original post-sentence motion.

a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993); *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. *Goggins*, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* at 727 (emphasis omitted).

Appellant contends that his aggregate sentence is excessive because the trial court failed to consider certain mitigating circumstances. Under our precedent, Appellant's claim presents a substantial question, thus permitting our review. *See Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question"); *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (holding: a claim that the appellant's sentence was unduly excessive, "together with his claim that the court failed to consider his rehabilitative

needs and mitigating factors upon fashioning its sentence, presents a substantial question").[3]

We have explained:

> sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Crork*, 966 A.2d 585, 590 (Pa. Super. 2009) (quotation marks and citations omitted).

Appellant claims that the trial court failed to adequately consider several mitigating circumstances when imposing sentence. *See* Appellant's Brief at 14-21. Appellant's discretionary aspect of sentencing claim initially fails because, during Appellant's sentencing hearing, the trial court was informed by a pre-sentence investigation ("PSI") report. *See* N.T. Sentencing, 1/27/25, at 8. Given this fact, we must "presume that the sentencing judge was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Commonwealth v.*

---

[3] We note that we have also "held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Eline*, 940 A.2d 421, 435 (Pa. Super. 2007) (quotations, citations, and corrections omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (collecting cases). Nevertheless, in light of our conflicting precedent, we will review the merits of Appellant's discretionary aspects of sentencing claim.

*Devers*, 546 A.2d 12, 18 (Pa. 1988). To be sure, our Supreme Court has

held:

> A [PSI] report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that [sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Id.*

Further, as the trial court explained at sentencing:

> All right.
>
> So the things that I've considered in making the sentence, including the need for the protection of the public, the gravity of the offense in relation to the impact on the victim's life and the community and the rehabilitative needs of [Appellant]. And that includes all of the information that I heard here today. The information that was submitted to the Court, including the [PSI] report, the sentence report, mitigation packets admitted by defense, sentencing memos submitted by Commonwealth, statements made by Commonwealth and defense at this proceeding, statements made by [Appellant], statements made by [S.P.] both at trial -- both of the two trials as well as her statement that she made to the Court today.
>
> The Court has also considered the sentencing guidelines. We prepared and reviewed the sentence guideline form for each offense. . . .

So I'm going to start by acknowledging that this is a different kind of case than what I usually see in the context of these kind of accusations. These crimes occurred 26 years ago. Both parties, [Appellant] and [S.P.] are highly accomplished in their individual lives.

[S.P.], you have given a voice to the experience of being a victim in this kind of a case, and that's not something that most people in my courtroom are able to do. And I think that the words that you shared with us remind us of the seriousness of these crimes and that even when something only lasts a few seconds, it can cause deep wounds that last for decades.

And I think in that context, one of the responsibilities I have as a court, is to remember the impact of the gravity of the offense in relation to the victim and the community. And the sentencing guidelines give me a lot of guidance on how to think about that gravity. That's what the offense gravity score is all about.

And for aggravated indecent assault -- both counts -- the guidelines tell me, even for someone with no prior record, like [Appellant], that a state level sentence is the appropriate sentence. And I think when we have that as our starting point, probation is not an appropriate remedy for offenses of this nature. But I disagree with the Commonwealth's argument that there's no mitigation.

My role as the judge is to see the entirety of the person that I'm responsible to sentence, and he is more than that one thing that he did. And he's going to -- there are consequences to his life because of that bad, bad, bad thing that he did. But he is more than that one bad act. And I have a responsibility to consider the entirety of who he is. So there is mitigation when we talk about mitigation. And the fact that he's generally been a contributing member of our society is mitigating.

So the other thing that, you know, we raised at sidebar is the collateral consequences in the context of immigration. I think there are a lot of unknowns about what that would, actually, look like in [Appellant's] particular circumstances. And even

though he's presently a United States citizen, it is possible that that may not shield him from a deportation, depending on how everything were to suss out in the immigration context.

And I take that into account as well because, you know, if we're talking about house arrest, which would be a parole level sentence, that would still put him as somebody who could be picked up by immigration and removed from the country without completing his sentence. So that's something else I need to think about.

So, you know, I, kind of, considered all of this, and I think that I need to be following the guidelines in a sentence like this. The serious nature of these offenses needs to be considered, and the guidelines give me the guidance on that.

. . .

So let me explain a little bit of what I did. So I went on the bottom side of aggravated indecent assault. I think his mitigation factors -- that's where I really took those into account. I didn't go into the mitigated range, but I kept it at the very bottom part of the standard guideline range.

And also, mitigation weighed in making things run concurrent rather than consecutive, because while the aggravated indecent assaults were really one act -- different elements but one act -- the indecent assault was a separate act. And so that's -- and indecent assault in the nature that it was is, which is that he placed her hand on his penis, it's on the more severe end of indecent assault. Because indecent assault can be as something simple as, you know, a kiss. And so I felt like going to the bottom end of the guidelines there wouldn't fully take into account the seriousness of that particular charge. And so that's why that one is not at the bottom part of the guideline. But again, they are all concurrent.  And it's the mitigation that really led me to that conclusion rather than doing two separate consecutive sentences for the ag assault and the indecent assault. I just put them all as a concurrent sentence.

> Also, I've put a long probationary tail. I think that's important for the safety of the community and the different restrictions I'm going to put in the probationary period.

N.T. Sentencing, 1/27/25, at 46-51.

The record demonstrates that, in crafting Appellant's sentence, the trial court carefully considered the mitigating factors in this case, as well as "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ***See id.***; ***see also*** 42 Pa.C.S.A. § 9721(b). We thus conclude that Appellant's excessive sentencing claim is belied by the record and fails.

Next, Appellant claims that his convictions were against the weight of the evidence. When considering a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a

- 12 -

weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Windslowe**, 158 A.3d 698, 712 (Pa. Super. 2017) (quotation marks omitted). "[A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Commonwealth v. Loughman**, 314 A.3d 569, 572 (Pa. Super. 2024) (quotation marks and citations omitted).

Appellant claims that the jury's verdict was against the weight of the evidence because he presented "a considerable amount of good character evidence" at trial. Appellant's Brief at 21-26. This claim fails. As the trial court explained:

> A verdict is not against the weight of the evidence as the result of a mere conflict in the testimony or because the trial court on the same facts would have arrived at a different conclusion. **Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). A trial court does not sit as the "thirteenth juror" when addressing a claim that the verdict is against the weight of the evidence. Rather, the trial court's role "is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice." [**Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009)]. In other words, a verdict is against the weight of the evidence only when it "is so contrary to the evidence as to shock one's sense of justice." **Id.**
>
> In the present case, the jury had the opportunity to consider all of the competing evidence, including the evidence of [Appellant's] good character, and, after consideration of everything, the jury determined that the complainant's

- 13 -

testimony was credible and that the totality of the evidence was adequate to prove the elements of the crimes charged beyond a reasonable doubt.  The jury also elected not to believe [Appellant's] version of the events.  It would be improper for the [trial court] to discard the determinations of the jury.  The evidence in the trial record was not so tenuous, vague, and uncertain that the verdict against [Appellant] shocked the conscience of the [court], nor did the verdict deny justice.  The verdict, therefore, was not against the weight of the evidence.

Trial Court Opinion, 8/26/25, at 8 (footnotes and some citations omitted).

We agree with the trial court's able explanation and conclude that it did not abuse its discretion when it denied Appellant's weight of the evidence claim.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2026